IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEELAND MICHAEL LOCKETT,<br>    PLAINTIFF, | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. 4:12-CV-221-Y |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER<br>OF SOCIAL SECURITY,<br>    DEFENDANT. | § <br> § <br> § <br> § <br> § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Leeland Michael Lockett ("Lockett") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Lockett applied for SSI on December 13, 2007, when he was seventeen years old. (Tr. 14, 64.)

After Lockett's application for benefits was denied initially and on reconsideration, Lockett requested a hearing before an administrative law judge ("ALJ"). (Tr. 64–65, 78–79.) Lockett turned eighteen years old on November 8, 2008. (Tr. 64.) The ALJ held a hearing on November 24, 2009, and issued an unfavorable decision on December 23, 2009. (Tr. 14–34.) On

December 9, 2011, the Appeals Council denied Lockett's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 4–5.) Lockett subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416 (2013). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

> Childhood disability for purposes of SSI is evaluated under the following standard:
>
> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906. The Commissioner uses a three-step analysis to determine if a child is entitled to SSI under this standard. *See* 20 C.F.R. § 416.924(a). First, if the claimant is engaged in substantial gainful activity, he will be found not disabled. *Id.* § 416.924(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the second step and determines whether the claimant has an impairment or combination of impairments that is severe. *Id.* § 416.924(c). If so, the Commissioner proceeds to the third step to determine whether the impairment meets, medically equals, or functionally equals the severity of an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* § 416.924(d). If the claimant

has such an impairment that meets the duration requirement, the claimant will be found disabled. *Id.* § 416.924(a).

If the claimant turns eighteen years old after the disability application is filed but before the Commissioner makes a determination or decision, the Commissioner uses the child rules in 20 C.F.R. section 416.924 for the period during which the claimant is under age eighteen. *Id.* § 416.924(f). For the period starting with the day the claimant turns eighteen years old, the Commissioner uses the disability rules in 20 C.F.R. section 416.920 for adults who file new claims. *Id.* § 416.924(f).

For adult claims of disability, a five-step analysis is employed. 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The

claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* At step four, the claimant's RFC is used to determine if the claimant can still do his past relevant work. *Id.* § 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

Under either the child or adult rules, a denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

Lockett presents the following issues:

1. Whether Lockett was denied due process by the Commissioner's failure to incorporate into the record evidence that was relied upon by the ALJ in making his decision; and

2. Whether the Commissioner carried her burden at step five by using the Medical-Vocational Guidelines in appendix 2 of subpart P of the Regulations No. 4.

(Pl.'s Br. 1.)

## IV. ALJ DECISION

In his December 23, 2009 decision, the ALJ concluded that Lockett was not disabled within the meaning of the SSA. (Tr. 30–31.) In making his determination, the ALJ first followed the three-step sequential evaluation process for child disability. At the first step, the ALJ found that Lockett had not engaged in substantial gainful activity since the date his application for benefits was filed. (Tr. 18.) At the second step, the ALJ found that, before attaining age eighteen, Lockett had the following severe impairments: bipolar disorder, anxiety with agoraphobia, and ADHD. (Tr. 19.) Finally, at the third step, the ALJ found that, before attaining age eighteen, Lockett did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the impairments in the Listing. (Tr. 19, 23.) Thus, the ALJ found that Lockett was not disabled prior to attaining age eighteen. (Tr. 28.)

The ALJ then turned to the five-step sequential evaluation process for adult claims of disability. The ALJ first found that Lockett had not engaged in any substantial gainful activity since the date his application for benefits was filed. (Tr. 18.) At the second step, the ALJ found that Lockett had not developed any new impairment since attaining the age of eighteen but that he had continued to suffer from a severe impairment or combination of impairments. (Tr. 29.) At the third step, the ALJ found that Lockett's severe impairments did not meet or equal in severity to an impairment contained in the Listing. (Tr. 15.)

The ALJ then found that Lockett had "the residual functional capacity to perform medium work as defined in 20 CFR [section] 416.967(c) limited to simple tasks. He cannot perform any work with the general public." (Tr. 29.) Next, at the fourth step, the ALJ found that Lockett had no past relevant work. (Tr. 29.) Finally, at the fifth step, the ALJ found that, based on Lockett's age, education, work experience, and RFC, jobs have existed in significant numbers in the national economy that Lockett had been able to perform and, thus, Lockett had not been

under a disability since the day he attained the age of eighteen through the date of the decision. (Tr. 29–30.)

## V. DISCUSSION

### A. Issue One: Was Lockett Denied Due Process by the Commissioner's Failure to Incorporate into the Record Evidence That Was Relied upon by the ALJ in Making His Decision?

In his first issue, Lockett complains that the ALJ discussed medical evidence presented in the course of proceedings relating to Lockett's prior application for benefits, which application had been denied by the same ALJ in a decision dated July 26, 2007. (Pl.'s Br. 9.) This medical evidence was not included in the transcript of the record relating to the current application before the Court. *See* 42 U.S.C. § 405(g) (requiring the Commissioner to file with the Court "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based"). Lockett argues that his right to due process was violated because the ALJ did not proffer this prior medical evidence to him or give him an opportunity to review, comment, or rebut the statements made within these records. (Pl.'s Br. 10–11.)

First, the Court is not convinced that Lockett has adequately alleged a violation of his due process right. To support the argument that Lockett's right to due process was violated by the ALJ's using evidence from a *previous* proceeding, Lockett cites cases that all involve use of medical reports submitted after the hearing in the *current* proceeding. *See Wallace v. Bowen*, 869 F.2d 187, 192 (3d Cir 1988); *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979); *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir. 1976); *Johnson v. Bowen*, 699 F. Supp. 475, 480–81 (E.D. Penn. 1988). In these cases, the ALJs violated the claimants' due process rights by considering *post-hearing* medical reports because the claimants were not afforded any opportunity to subpoena or cross-examine witnesses or present evidence in rebuttal. In contrast, here, the evidence cited by the ALJ was obtained

through Lockett's prior application for benefits, which was denied by the same ALJ *after a hearing*.[1] (Tr. 19.) Thus, Lockett had the opportunity to examine, review, comment upon, and rebut this evidence at the hearing on his prior application for benefits. Lockett cites the Court to no legal authority for the proposition that the ALJ violated his due process rights merely by failing to give him a *second* hearing on this evidence that had already been presented in the earlier proceedings.

Furthermore, Lockett has failed to demonstrate substantial prejudice resulting from the alleged due process violation. *See Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981) (holding that a petitioner must show substantial prejudice in order to prove denial of due process in an administrative proceeding), *cited in Hayes v. Astrue*, No. H-09-3443, 2012 WL 2994248, at *19 (S.D. Tex. July 20, 2012). At most, Lockett states only that he should be provided a copy of the prior medical records and that he should be allowed to review, comment, and rebut such evidence. (Reply 3.) Lockett does not claim that he was not given the opportunity to do so in the first hearing, and he does not argue that the ALJ incorrectly presented this evidence in the current decision or explain how he would have attempted to rebut it. Thus, the Court concludes that Lockett has established no substantial prejudice, and remand on his first issue is not required.

B. **Issue Two: Did the Commissioner Carry Her Burden at Step Five by Using the Medical-Vocational Guidelines in Appendix 2 of Subpart P of the Regulations No. 4?**

In his second issue, Lockett contends that the ALJ erred in applying the medical-vocational guidelines set forth in Appendix 2 of Subpart P of the regulations (the "GRIDS" or

---

[1] The *Lonzollo* court stated that the claimant's right to due process was violated because "the final decision was based in part on evidence not presented at that hearing, *nor at any other hearing* as to which [the claimant] had notice and an opportunity to present evidence in rebuttal." 534 F.2d at 714 (emphasis added). Here, the evidence at issue was presented at a prior hearing on Lockett's earlier application for benefits, not through a post-hearing submission that Lockett never had any opportunity to challenge.

"grid rules") to determine at step five that he can perform work that exists in significant numbers in the national economy because he suffers from nonexertional limitations that make the grid rules inapplicable. (Pl.'s Br. 11–15.)

> [The grid rules] relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. . . . Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983). However, "use of the grid rules is only appropriate 'when it is established that the claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect [her] residual functional capacity.'" *Watson v. Barnhart,* 288 F.3d 212, 216 (5th Cir. 2002) (alteration in original) (quoting *Crowley v. Apfel,* 197 F.3d 194, 199 (5th Cir. 1999)). If the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000).

There are two exceptions to these general principles. "First, even when a claimant has a nonexertional impairment, the Commissioner may nevertheless rely exclusively on the grids to determine whether work exists in the national economy [that the] claimant can perform if (a) the ALJ determines that the nonexertional impairment does not significantly affect the claimant's RFC, and (b) substantial evidence supports that determination." *Nobles v. Comm'r of Soc. Sec. Admin.,* No. 9:00-CV-128, 2002 WL 553735, at *4 (E.D. Tex. Apr. 10, 2002) (citing *Newton,* 209 F.3d at 458). "Second, even when a claimant's RFC is so significantly affected by a nonexertional impairment as to preclude resort to the grids for a disability determination, the grids may nevertheless be consulted as a 'framework for consideration of how much the

individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.'" *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)). Accordingly, before applying the grid rules, the ALJ was required to determine whether Lockett's nonexertional limitations significantly affected his RFC. *See Newton*, 209 F.3d at 459; *Smith v. Astrue*, No. 3:08-CV-1241-N, 2009 WL 1203407, at *9 (N.D. Tex. May 1, 2009); *Nobles*, 2002 WL 553735, at *4.

Here, the ALJ found at step two that Lockett suffered from bipolar disorder, anxiety with agoraphobia, and ADHD. (Tr. 17.) The ALJ further found that these impairments were severe because they "significantly limit[ed]" Lockett's ability to perform basic work activities. (Tr. 19, 29) (citing 20 C.F.R. § 416.920(c)). The ALJ then found that, after attaining the age of eighteen, Lockett had the RFC to perform medium work limited to (1) "simple tasks" and (2) no "work with the general public." (Tr. 29.) Because Lockett had no past relevant work, the ALJ proceeded to step five and noted that the grid rules indicated that approximately 2,500 separate sedentary, light, and medium unskilled occupations existed in the national economy.[2] (Tr. 29–30.) Although the ALJ stated that Lockett's "ability to perform all or substantially all of the requirements of [medium] work has been impeded by additional limitations," the ALJ found that Lockett was capable of making a successful adjustment to other work that exists in significant numbers in the national economy and that "[a] finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." (Tr. 30.)

Lockett asserts that his mental impairments impose nonextertional limitations (i.e., simple work and no work with the general public) that the ALJ identified in his RFC and, thus, the ALJ erred by applying the grid rules to find that he was not disabled. (Pl.'s Br. 14–15.) The Commissioner responds that application of the grid rules was proper because Lockett's

---

[2] The ALJ explained that the functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work. (Tr. 30.)

9

nonexertional limitations did not significantly erode the occupational base of unskilled work. (Def.'s Br. 14.) In support, the Commissioner argues that the mental demands of unskilled work are consistent with performing "simple" tasks[3] and work that does not involve contact with the general public.[4] SSR 85-15, 1985 WL 56857, at *4 (Nov. 30, 1984). The Court disagrees.

First, as to the restriction in the RFC limiting Lockett to "simple tasks," the Court recognizes that the regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). As the Commissioner points out, however, unskilled work also involves the ability "to understand, carry out, and remember simple instructions." SSR 85-15, 1985 WL 56857, at *4. This ability to understand, carry out, and remember simple instructions is addressed in the Dictionary of Occupational Titles ("DOT") through its "general educational development" ("GED") scale. Employment and Training Administration, U.S. Dep't of Labor, Dictionary of Occupational Titles app. C (4th ed., rev. 1991) [hereinafter DOT], *available at* 1991 WL 688702.

Every job description in the DOT includes a GED designation describing "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* The GED scale is comprised of six levels designating the "reasoning development," "mathematical development," and "language development" needed to perform jobs at each level. *Id.* Courts have repeatedly found that jobs with a GED reasoning development level up to 2 are consistent with limitations to simple instructions and routine

---

[3] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

[4] "[Unskilled] jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15, 1995 WL 56857, at *4.

tasks.[5] *See Short v. Astrue*, No. 3:11-CV-713-N, 2013 WL 655020, at *10 (N.D. Tex. Feb. 5, 2013) (citing cases), *adopted in* 2013 WL 655022 (N.D. Tex. Feb. 22, 2013).

However, there is conflicting guidance regarding whether jobs with a GED reasoning development level of 3 involve simple work.[6] *Compare Otte v. Comm'r, Soc. Sec. Admin.*, No. 3:08-CV-2078-P, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010) ("Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work."), *adopted in* 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010), *and Davis v. Astrue*, No. 3-06-CV-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) (concluding that the ALJ erred by concluding that a claimant who was limited to "simple or detailed instructions" was capable of performing a job with a reasoning development level of 3), *with Gaige v. Astrue*, No. 4:12-CV-008-A, 2013 WL 1291754, at *14 (N.D. Tex. Mar. 1, 2013) ("A reading of the definition of RDL of 3 does not, on its face, indicate that jobs with a RDL of 3 involve more than simple, repetitive work."), *adopted in* 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013). Because "the Social Security's list of unskilled sedentary jobs shows that many jobs within [the unskilled] range require more than the mental capacity to follow simple instructions," *Otte*, 2010 WL 4363400, at *7, the Court is not convinced that the limitation to "simple tasks" did not significantly affect Lockett's RFC or significantly affect his ability to do all unskilled medium, light, and sedentary work.

Next, as to the limitation in the RFC restricting Lockett from working with the general public, the Court is similarly unconvinced that this nonexertional limitation did not significantly affect Lockett's RFC or significantly affect his ability to do all unskilled medium, light, and

---

[5] Jobs with GED reasoning development level 1 require the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, *supra*, app. C. Jobs with GED reasoning development level 2 require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

[6] Jobs with GED reasoning development level 3 require the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, *supra*, app. C.

sedentary work. The Commissioner argues that because unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people," Lockett's limitation to no work with the general public does not significantly erode the potential occupational base of unskilled work. (Def.'s Br. 15) (citing SSR 85-15, 1995 WL 56857, at *4). However, the mere fact that unskilled work involves jobs that "ordinarily" deal "primarily" with objects, rather than people, does not necessarily compel a conclusion that there is an insignificant number of unskilled jobs that do not require *any* work with the general public. It may be that a vocational expert ("VE") could identify unskilled medium, light, and sedentary jobs that would not be affected by Lockett's nonexertional limitations. It may also be that a VE would find that limitations to "simple tasks" and no "work with the general public" would affect such jobs and erode the number of unskilled medium, light, and sedentary jobs available. But because the ALJ did not consult a VE in finding at step five that Lockett could perform a significant number of jobs existing in the national economy, the Court does not have the benefit of VE testimony in determining whether this finding is supported by substantial evidence.

Again, an ALJ's use of the grid rules to direct a finding of nondisability is proper only when a claimant's nonexertional impairments do not significantly affect his RFC. *See Watson*, 288 F.3d at 216. If the claimant's nonexertional limitations significantly affect the claimant's RFC, then the ALJ is not authorized to use the grid rules and instead must rely on a VE to establish that such jobs exist in the national economy. *See Newton*, 209 F.3d at 458–59; *Smith*, 2009 WL 1203407, at *9. Here, the Commissioner defends the ALJ's use of the grid rules by claiming that the occupational base "remains virtually intact" despite Lockett's nonexertional limitations. (Def.'s Br. 17.) The ALJ imposed restrictions on Lockett's RFC based on these same limitations, however, and he stated that Lockett's "ability to perform all or substantially all of the requirements of [medium] work has been impeded by additional limitations." (Tr. 30.)

Thus, it is not clear to the Court that Lockett's ability to perform all unskilled medium, light, and sedentary work was unaffected by these limitations.

Accordingly, because the ALJ found that Lockett's nonexertional limitations significantly affected his RFC, the ALJ was precluded from relying upon the grid rules at step five to determine that there were a significant number of jobs existing in the national economy that Lockett could perform. *See Newton*, 209 F.3d at 458. Although the ALJ stated that he was relying on grid rule 203.25 as a "framework," he did not cite any other source in finding that Lockett was not disabled at step five or explain how Lockett's nonexertional limitations would affect the grid rules results. (Tr. 30.) Therefore, the Court finds that the ALJ erred when he relied upon the grid rules in this case to determine that Lockett could perform other work despite his nonexertional limitations and that, consequently, the ALJ's decision was not supported by substantial evidence. Remand on Lockett's second issue is required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28

U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until September 6, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 23, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE